**In re Patrick Joseph WHITTEN, Debtor.**

**Bankruptcy No. 81–00018.**

United States Bankruptcy Court,
District of Columbia.

May 20, 1981.

---

Sherman L. Cohn, Washington, D.C., for plaintiff.

George F. Bason, Jr., Washington, D.C., for defendant.

## MEMORANDUM OPINION

(Order Directed to Debtor's Attorney
Pursuant to Bankruptcy Rule 220
and U.S.C. § 329)

ROGER M. WHELAN, Bankruptcy Judge.

The issue to be addressed in this Rule 220 hearing is whether Chapter 13 of the Bankruptcy Code may be utilized to stay a foreclosure sale, when the intent is to use the delay afforded by the automatic stay provision of 11 U.S.C. § 362 solely to seek refinancing of the debtor's residence and with no intent to ever effectuate a Chapter 13 plan. The Court, after careful review of the legislative history and statutory provisions dealing with the contents of a Chapter 13 plan (11 U.S.C. § 1322), is of the opinion that such use of Chapter 13 is improper and a debtor's attorney who initiates a case solely for this reason, violates the spirit and proscriptions of Bankruptcy Rule 911.[1] However, based on the facts of

---

1. Bankruptcy Rule 911, an adaption of Rule 11 of the Federal Rules of Civil Procedure, states in pertinent part:

"The signature of an attorney on any pleading, motion, or application served or filed in a bankruptcy case constitutes a certificate by him that he has read the paper; and to the best of his knowledge, information and belief, there is good ground to support it; and that it is not interposed for delay or other improper purpose. If a pleading or written motion or application is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false, and the case may proceed as though the paper had not been served or filed. For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action."

this case and for reasons which will be fully set forth in this opinion, the Court declines to impose any sanctions as to this debtor's counsel.

The individual debtor, Patrick Joseph Whitten, is gainfully employed in the business of international freight forwarding and shipping and serves as president of Whitten International, Inc., a corporation, with offices located at 6 E Street, S. E., Washington, D. C. Debtor reports (see 2F of the Chapter 13 statement) a net monthly income of $2,500 and his wife also has an additional net monthly income of $568.96.[2] The budget submitted (paragraph 4B of the Chapter 13 statement) indicates that there is a surplus monthly income in excess of $2,100. Based on these facts, there is no question that the debtor is an individual with regular income as defined under 11 U.S.C. § 109(e). Aside from other scheduled assets, the debtor's primary asset is his home located at 518 12th Street, N. W., Washington, D. C. This property is owned by the debtor and his wife as tenants by the entireties. According to the Chapter 13 statement, the real estate has an assessed valuation of $89,000.[3] This real property is subject to two deeds of trust. The first deed of trust secures F & M Mortgage Company and has a balance of approximately $53,000, which was not in arrears at the time of filing. The second deed of trust, securing Stephen Roberti, has an approximate balance due of $35,000. According to the terms of the promissory note, this deed of trust was entirely due and payable as of the filing of the debtor's petition. It was this latter secured obligation that precipitated the filing of the Chapter 13 on January 15, 1981. The debtor had no other obligations due at the time of the filing of his Chapter 13 petition.

As noted above, the promissory note held by Stephen Roberti as a secured creditor provided for payment in full in August 1980. Because of this, the debtor began in August an "earnest pursuit of refinancing of both first and second deeds of trust". (Affidavit of Patrick J. Whitten at ¶ 3, filed April 8, 1981.) These efforts at refinancing were directed through the offices of Pioneer Mortgage Company and an application was made for a VA loan in connection with a refinancing. Monthly payments, under the promissory note, were continued by the debtor with a 2% add-on, through the month of December 1980 at which time the note holder again called for payment in full. The debtor was unable at that time to make payment in full as the anticipated refinancing had not yet been secured. A notice of foreclosure was thereupon directed to the debtor in December, and a sale was apparently scheduled for January 19, 1981.[4] Also, at that time an application with the Veterans Administration was in the process of being approved; however, final approval was delayed because certain financial documents which related to the debtor's corporation had not been received by the Veterans Administration.[5] On March 10, 1981, less

---

**2.** Although the wife is jointly and severally liable with her husband on both of the scheduled deeds of trust, securing the real property at issue, the petition was filed solely by the husband as an individual debtor.

**3.** At the time of the scheduled 220 hearing, the testimony of the individual debtor indicates that a recent appraisal secured in December 1980 reflected a fair market value for these premises of $130,000. In addition, the debtor's testimony established that a prior appraisal that had been secured during the summer of 1980 indicated an appraised fair market value in the range of $150,000.

**4.** Although the debtor's testimony was far from clear on this point, and no documentation was produced by either the debtor or his counsel at the time of hearing, debtor's testimony does

establish that some legal action was anticipated by the holder of the second deed of trust.

**5.** According to the affidavits filed by George Bason, Jeffrey Sherman, Kitty Peshak, and Patrick Whitten "the prospects for a refinancing were always in question". (Peshak Affidavit at 4) and "the refinancing became less and less assured." (Whitten Affidavit at 4.) The testimony of Patrick Whitten, which the Court finds credible, indicates that the question of documentation was the primary delay encountered by the debtor in connection with the application process, and it is further clear from the testimony of Whitten that this application for refinancing was being aggressively pursued by the debtor.

than two months after the initiation of the Chapter 13 case, the loan commitment was secured by the debtor.

Originally, the Chapter 13 was filed *pro se* by the debtor. However, the debtor had been to the law offices of George Bason, Esq., pre-petition and at the advice of counsel initiated the Chapter 13 to stay the threatened foreclosure.[6] A fee of $80.00 was paid by the debtor on January 15, 1981, to Mr. Bason; however, debtor's attorney did not enter his appearance until February 5, 1981. Counsel at trial maintained the time lag was the result of delay in the receipt of a written retainer agreement. (Transcript at 42–43.)

The following chronology of events is presented in order to highlight the events leading up to the voluntary dismissal of the Chapter 13 on March 17, 1981:

```
1/15/81 - Voluntary petition filed pro se
          by Patrick Joseph Whitten with
          list of creditors.  Filing fee
          paid.

1/26/81 - Motion for extension of time within
          which to file Chapter 13 statement
          and plan - filed pro se.  Order entered
          granting extension to Feb. 5, 1981.

2/5/81    Praecipe filed noting and entering
          appearance of George Bason as
          attorney for the debtor.

2/5/81    Motion for further extension of time
          to file Chapter 13 Statement and
          Plan

2/6/81    Order entered extending time to
          file Chapter 13 Statement and Plan
          until March 1, 1981.

2/10/81   Order directing filing of statement of
          attorney pursuant to Section 329.

2/29/81   Attorney's disclosure statement filed
          pursuant to court order of February
          10, 1981

3/1/81    Motion for further extension of time
          to file Chapter 13 Statement and Plan

3/3/81    Order denying motion for extension
          of time.  Said order directed filing
          of Chapter 13 statement by March 6,
          1981.

3/6/81    Chapter 13 Statement and Plan filed
          pursuant to order of March 3, 1981.

3/13/81   Motion for immediate voluntary dismissal
          without hearing.
```

---

**6.** The provisions of 11 U.S.C. § 362(a) applicable in Chapter 13:

"Except as provided in Subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of

(3) any act to obtain possession of property of the estate or of property from the estate;

3/17/81    Order pursuant to Bankruptcy Rule 220
           and 11 U.S.C. §329; Order granting
           voluntary dismissal of Chapter 13
           case.

Based on the order of March 17, 1981; namely, the Order pursuant to Bankruptcy Rule 220 and 11 U.S.C. § 329, this Court conducted a hearing on April 9, 1981. This hearing was to inquire into:

> ". . . the matter of a fair and reasonable attorney's fee in connection with this case as well as any fees paid in contemplation of this case." (*See* Court Order dated March 17, 1981.)

This inquiry was generated by the fact that it appeared

> ". . . to the Court that this case was filed solely for purposes of delay, and it further appearing that the attorney of record has violated the provisions of Bankruptcy Rule 911(a) in connection with the filing of said pleadings . . .". (*Id.*)

In determining whether the Chapter 13 was improperly filed—in that delay was its sole and apparent object—the Court must examine and determine the proper object and goal of Chapter 13 and relate them to the stated facts of this case. Under the permissive provisions of 11 U.S.C. § 1322(b)(2) a plan cannot modify the rights of a holder of a security interest in real property which is the debtor's principal residence. However, Section 1322(b)(5) does "provide for the curing of any default within a reasonable time." Because the entire amount (in excess of $35,000) was due and payable prior to the filing of the petition, the only limited relief that would be available to this individual debtor would be to cure the default within a reasonable time. In this regard the debtor's plan provided for either a lump sum repayment two months after confirmation if the debtor received refinancing or monthly payments of $2,000 with the entire amount of tax refund to be paid directly outside the plan when received.[7]

Based on the proposed plan, it would take in excess of 18 months to satisfy the entire indebtedness. However, this plan never had the potential to be feasible as the entire second deed of trust indebtedness was then due and payable to the secured creditor. Counsel for Mr. Bason argues that the consent of the second trust holder would have been sufficient for confirmation of this plan by the Court. However, this consent was unlikely in that as of the filing of the Chapter 13 the debt was then due and payable in full and a foreclosure proceeding had already been scheduled. Based on the debtor's testimony at the time of the scheduled 220 hearing, as well as the statements of Mr. Bason in his affidavit,[8] the Court is convinced that the only viable alternative remaining was the refinancing of the debtor's residence, and not the proposed repayment plan.[9]

---

7. *See* Chapter 13 plan filed March 6, 1981. The holder of the first deed of trust, F&M Mortgage Company, was to be paid outside the plan and all monthly payments were current as to the filing of the Chapter 13 petition.

8. Mr. Bason's affidavit at § 6 states in pertinent part that: "Mr. Magazine made it apparent to me:
   (a) that he was fully aware of his client's rights under the bankruptcy law, including specifically the right to request leave of this Court to foreclose;
   (b) that he and his client chose not to exercise such rights, at least for a reasonable time; and
   (c) that he and his client would much prefer a prompt, full pay-out through refinancing to either a monthly-payment plan or a foreclosure."

9. Even if there were unsecured creditors involved in this case, confirmation of the plan would be unlikely because it would fail to meet the liquidation test under Section 1325(a)(4). This section provides: "The court shall confirm a plan, if . . .
   (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of cash allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the

■ The second argument advanced by counsel is that the filing of the Chapter 13 petition is permissible solely in order to save a debtor's home from foreclosure. In this regard, counsel argues that refinancing is a permissible tool available to the debtor because Chapter 13 permits "taking assets from the debtor's estate to pay off the creditor in full." (Counsel's brief at 10.) While it is undisputed that § 1322(b)(8) permits a debtor to liquidate his indebtedness by a sale of property, either from exempt or non-exempt sources (5 Collier on Bankruptcy § 1332.01 at 1322–13 [15th ed. 1980]), a refinancing is not a "sale of property". Refinancing is strictly a contractual device entered into between the debtor and a lender to take advantage of the equity built up in property over a period of time. It is a non-statutory remedy that the debtor has available to him in order to withdraw accrued equity in property. Its ultimate result is the incurring of a new secured debt.[10]

Refinancing is therefore a contractual remedy to be employed outside of a Chapter 13. In this particular case, the Chapter 13 was filed with the primary goal of stopping a foreclosure sale so that the debtor would be afforded the time necessary to liquidate his existing secured indebtedness through a refinancing. Employing refinancing in this way is antithetical to the purposes and goals of Chapter 13, in that in a Chapter 13 a repayment plan is clearly envisioned. Under § 1322(a)(1): "The plan shall—(1) (1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." Initiating a Chapter 13 case for the sole purpose of effecting

delay so that a debtor can find refinancing on his principal residence is not a proper utilization of this Chapter. While counsel cites several cases in support of his position, a careful review of the facts demonstrates that these cases are inapposite to the situation pending before this Court. For example, counsel cites *In re Thacker*, 6 B.R. 861 (W.D.Va.1980) for the proposition that "there is nothing inherently wrong, dishonest or improper about a debtor . . . (bringing) a Chapter 13 proceeding in order to save his home. . . . Indeed, the bottom line of most Chapter 13 cases is to preserve and avoid foreclosure of the family house." *Id.* at 865 (*See* Counsel's Memoranda at 5.) This Court has never questioned the fact that a debtor may initiate a Chapter 13 in order to save his home in lieu of filing a Chapter 7 which is a straight liquidation. However, a debtor may not file a Chapter 13 petition and receive the benefits of the automatic stay provision of 11 U.S.C. § 362 when he has no intent nor any possibility of effectuating a Chapter 13 plan. There are only two secured creditors listed in debtor's schedules. The secured asset is the debtor's principal place of residence. As to both of these secured creditors the debtor could never have filed a Chapter 13 plan for the reasons cited above.

Further, the Court recognizes that Chapter 13 in many instances will be utilized by debtors who wish to save their home, but this does not authorize the filing of a Chapter 13 solely to gain the time necessary to refinance a home. Counsel postulates to the court in his memoranda (at 1) that "(t)he Bankruptcy Code and Rules specifically sanction and indeed mandate delay, preventing foreclosure, by providing for a stay of, *inter alia*, foreclosure proceedings

---

debtor were liquidated under Chapter 7 of this title on such date."
In this case, the debtor's testimony establishes that there was an established fair market value for this property in the range of $130,000–$150,000. Accordingly, were this case filed as a Chapter 7 liquidation case, the secured and unsecured creditors would be satisfied in full within such time as would be necessary to effect a sale of the real estate.

10. This not to say that in every case a debtor is precluded from exploring this device in order to solve a financial crisis; but, in this Court's opinion, such a refinancing would only be likely where there are a number of creditor interests involved and where there was already a pending Chapter 13 in progress. Where the refinancing is the intended goal at the very inception of the filing of a Chapter 13 case, there obviously is no function for the Court to perform within the parameters of Chapter 13.

immediately upon the filing of a petition." For this proposition counsel's brief cites H.R.Rep.No.95–595, 95th Cong., 1st Sess. 123 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6084 which states that:

> "The debtor will usually file his plan with the petition commencing the case, but the (Bankruptcy Code) gives him the opportunity if he is pressed into Chapter 13 in a hurry to avoid aggressive creditors, to develop and file his plan after the commencement of the case."

However, what counsel fails to note is that the plan is required to be filed within ten days from the filing of the petition. In this case, the debtor, acting *pro se*, sought one delay of ten days, and two more delays were sought once counsel entered his appearance. The legislative history relied upon in no way "sanctioned" delay. It merely sought to protect those debtors who in good faith filed their petition with the intent to effectuate a Chapter 13 plan. Congress did not intend to protect a debtor who was merely attempting to hold the creditors at bay and had no intent of filing a plan.

Counsel also refers the Court to the legislative history of both the House and Senate when they were discussing the automatic stay provisions of § 362 to support counsel's argument that the legislative intent was to allow the debtor to file a Chapter 13 plan in order to seek refinancing. Counsel cited to the Court that "(t)he automatic stay ... gives the debtor a *breathing spell* from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions." S.Rep.No.95–989, 95th Cong., 2d Sess. 54–55

(1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5840. [emphasis added by counsel] However, counsel fails to realize that this Court is not questioning that the filing of a Chapter 13 automatically stops all foreclosure action. The issue the Court is addressing is whether a debtor who has no intent and indeed little likelihood of filing a plan may hide behind the automatic stay's protection to the potential detriment of creditors. Indeed, Congress recognized that there would be a delay resulting from the automatic stay provisions. However, the Court feels it was never the intent of Congress to allow a person to abuse this provision by using it solely for the purpose of delay. It is clear that the legislative history does not sanction filing a Chapter 13 for the purpose of delay. Congress merely recognized that the automatic stay provisions were a necessary relief given to a debtor who, for all intents and purpose, wants to file a Chapter 13 plan.

■ The facts of this case, as evidenced by the motion for extension of time within which to file a Chapter 13, clearly supports this Court's conclusion that the primary goal in filing this case was to delay a threatened foreclosure so as to permit the debtor additional time in which to secure final approval of an already pending refinancing transaction.[11] Accordingly, the Court concludes that this case was initiated solely for purposes of delay within the meaning of Bankruptcy Rule 911(a). When an attorney signs a pleading, he must be fully satisfied that there are good grounds to support the pleading filed.[12] In this case,

---

11. Mr. Bason's motion for further extension of time, filed with this Court on March 2, 1981, clearly puts this in perspective; namely:

> "2. The expected refinancing has been delayed because of a misunderstanding concerning profit and loss statements furnished by the Debtor to the prospective lender....."
>
> "3. If the promised and imminent refinancing comes through, as anticipated by April 1, 1981, this entire Chapter 13 proceeding will be rendered moot."

12. According to 2A Moore's Federal Practice, § 11.02 at 11–5, the purpose of this rule is explained as follows:

> "Following the same purposes as those Equity Rules, the instant rule is designed to lay upon counsel a definite moral and professional obligation in drawing up and presenting pleadings, motions, and other papers. His signature is a certificate of good faith. Thus, for example, Rule 8b authorizes the use of a general denial 'subject to the obligations set forth in Rule 11', which means that counsel can use a general denial when, and only when, [emphasized] he can in good faith fairly deny all the averments of the opposing party's pleading."

if refinancing alone is not a legitimate purpose to be sought by the filing of a Chapter 13, and the plan is one that is not susceptible to confirmation by reference to the stated statutory standards, counsel has not met his obligation under the stated rule.

■ The problem now confronting the Court is how to fairly and justly deal with the parties and yet prevent future abuse of this Chapter. Under 11 U.S.C. § 1307(b) a debtor may dismiss his case "at any time." While this right of the debtor no doubt exists within the parameters of Chapter 13, it is not to be construed in derogation of the Court's inherent power to prevent the abuse and misuse of the judicial process where pleadings are filed in bad faith.[13]

■ When counsel represents a debtor in connection with a Chapter 13 case, Bankruptcy Rule 911 provides that:

"For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action."[14]

As to the sanctions provided for within the provisions of Bankruptcy Rule 911, the Court feels that the violation of this Rule under the facts presented, does not warrant any disciplinary action as to this attorney. The attorney in question is an experienced and able attorney in good standing with the Bar of this Court, and based on the reasons set forth in his Motion to Vacate and Rescind Order Pursuant to Bankruptcy Rule 220 and 11 U.S.C. § 329, the Court finds that the attorney was subjectively acting in good faith, and was attempting to fully protect the interests of his client. Furthermore, problems of interpretation will inevitably arise in connection with such matters under a new statute, and counsel's views, of course, are entitled to be given appropriate weight in connection with the pending facts. Accordingly, for this Court to impose sanctions in a disciplinary way against this counsel would be most unfair.

In addition to the Court's power under Rule 911, the Court has a further duty under 11 U.S.C. § 329 to determine a fair and reasonable attorney's fee in connection with the services rendered. After reviewing Section 329 of the Code and Bankruptcy Rule 220, it appears that the attorney's fee which was assessed in this case is fair and reasonable based on the actual rendition of services and time expended by counsel.

However, this Court hereby unequivocally and emphatically states to both this particular counsel and the Bar at large that this Court will not sanction the filing of a Chapter 13 petition in the future where the only intended goal and the only function to be served is the buying of time. Where the plan to be proposed in connection with the Chapter 13 is one that is not reasonably susceptible to confirmation based on the stated standards of Section 1325, a petition filed to merely seek delay by the protective provisions of the automatic stay found in 11 U.S.C. § 362(a), is not to be deemed a petition filed in good faith within the strictures of Bankruptcy Rule 911.

The Court is of the opinion that after a careful analysis of the standards and goals of Chapter 13, that although the attorney for the debtor acted subjectively in good faith, that this Chapter 13 petition violated Bankruptcy Rule 911.

---

**13.** For every right, there is a correlative duty and in connection with Chapter 13, 11 U.S.C. § 521 sets forth a debtor's specific duties. Accordingly, the filing of a Chapter 13 statement and the payment of the filing fee can be clearly ordered by the Court prior to any dismissal where the Court finds that such a statement is warranted. (*See* 11 U.S.C. § 105) *See* also: "Dr.—Well remembered that he had a salary to receive, and only forgot that he had a duty to perform." Edward Gibbon (1737–1794) Autobiography, p. 44.

**14.** In addition, the Court, pursuant to the provisions of 11 U.S.C. § 329, has the further duty and power to determine a fair and reasonable attorney's fees in connection with services rendered in a Chapter 13 case.