**In re Franklin JONES, Debtor.**

**Ruth Hayashi SNOW and Sherry Lynn Jewel, Plaintiffs,**

v.

**Franklin Delano JONES, aka Franklin D. Jones, aka Franklin Jones, and Arnold Kupetz, Trustee, Defendants.**

**Bankruptcy No. LA83–05687 BR.
Adv. No. LA83–7030 BR.**

United States Bankruptcy Court, C.D. California.

June 26, 1984.

Michael S. Polk, Rich & Ezer, Los Angeles, Cal., for plaintiff.

Julia Coleman, Compton, Cal., Franklin Jones, Los Angeles, Cal., for debtor/defendant.

Arnold Kupetz, Los Angeles, Cal., trustee.

James T. Eichstaedt, Los Angeles, Cal., U.S. trustee.

## MEMORANDUM OF OPINION AWARDING SANCTIONS AGAINST DEBTOR AND HIS ATTORNEY FOR FILING MULTIPLE BANKRUPTCY PETITIONS AND ORDER

BARRY RUSSELL, Bankruptcy Judge.

### ISSUE

The issue before the Court is whether it is appropriate to impose monetary sanctions against the debtor and the attorney who assisted the debtor in filing multiple bankruptcy petitions for the purpose of delaying foreclosure by secured creditors.

### FACTS

The plaintiffs, Ruth Hayashi Snow and Sherry Lynn Jewel, were holders of a promissory note executed by the debtor and dated April 22, 1980. The principal amount of the note was $9,000.00 and was secured by a second deed of trust on the debtor's residence.

The property was also encumbered by a first deed of trust held by Merrill Lynch Mortgage Corporation, formerly known as United First Mortgage Corporation (hereinafter "UFM") securing a $16,200.00 note; and a third deed of trust held by Home Owners Investment Company securing a $2,029.08 note.

On August 15, 1980, debtor initially defaulted on plaintiff's note. On February 2, 1981, plaintiffs recorded a Notice of Default and Election to Sell.

The debtor subsequently filed the following six bankruptcy petitions:

A. *Jones I* (Chapter 13 Petition)

1. On April 29, 1981, the debtor represented by an attorney other than the subject counsel, filed without schedules, a petition for relief under Chapter 13 of the Bankruptcy Code. (LAX No. 81–05230 CA). At that time, debtor's residence was in foreclosure by UFM and about to be sold.

2. On June 23, 1981, a Chapter 13 plan was confirmed.

3. On July 28, 1981, UFM filed a complaint for relief from stay (Adversary No. 81–3325). The debtor did not answer the complaint. On October 1, 1981, the debtor, UFM, and the trustee reached an agreement and a stipulation was filed wherein the debtor was to reinstate his loan under the Chapter 13 plan and make monthly payments.

4. During the 15 months life of this Chapter 13 case the debtor made only 3 monthly payments to the plaintiffs, on August 10, 1981, November 25, 1981, and December 19, 1981. Aside from those three payments as of May, 1983, the debtor owed

two and one-half years worth of payments to plaintiffs.

5. On July 7, 1982, the standing Chapter 13 trustee filed a motion to dismiss *Jones I*, because the debtor failed to make the payments called for under the plan.

6. On August 3, 1982, *Jones I* was dismissed, pursuant to the trustee's motion.

**B. *Jones II* (Chapter 7 Petition)**

1. On August 12, 1982, only nine days after the dismissal of *Jones I*, the debtor, acting *in pro per*, filed a petition for relief under Chapter 7 of the Bankruptcy Code (No. LA82–13463 RO). This petition was filed without the payment of the filing fees.

2. On October 6, 1982, the U.S. trustee filed a motion to dismiss *Jones II*, because the debtor failed to appear at the meeting of creditors pursuant to 11 U.S.C. § 341. The debtor did not respond to the motion.

3. On October 12, 1982, shortly after the U.S. trustee's motion to dismiss and prior to the actual dismissal, UFM filed a second complaint for relief from stay. There was no response to this complaint by the debtor.

4. On November 23, 1982, UFM's second complaint for relief from stay was granted. On the same day, the U.S. trustee's motion to dismiss *Jones II* was also granted.

**C. *Jones III* (Chapter 13 Petition)**

1. On November 19, 1982, four days prior to the dismissal and lifting of the stay under *Jones II*, the debtor filed, *in pro per*, a third petition (LAX 82–19876 BR) under the name Frank D. Jones.

2. In his Chapter 13 statement, the debtor listed a single prior Chapter 13, that was allegedly filed 5–14–82, No. LAX 1248729. No case under such a number was ever filed. No mention was made of the then pending Chapter 7 case or the prior Chapter 13 case, *Jones I*.

3. On January 11, 1983, this Chapter 13 petition was dismissed, pursuant to a motion to dismiss filed by the Chapter 13 trustee, for failure of the debtor to propose a feasible plan.

**D. *Jones IV* (Chapter 13 Petition)**

1. On January 10, 1983, one day prior to the dismissal of *Jones III*, the debtor filed a fourth petition, the third under Chapter 13 (LAX 83–00924 BR) *in pro per*, under the name of Franklin Jones and failed to list any of the prior cases.

2. On February 16, 1983, *Jones IV* was dismissed for failure of the debtor to prosecute the case and all restraining orders were vacated.

**E. *Jones V* (Chapter 13 Petition)**

1. On February 7, 1983, nine days before *Jones IV* was dismissed, the debtor filed a fifth petition (LAX No. 83–02518 BR). This Chapter 13 petition had been prepared and executed by debtor's attorney, Julia C. Coleman.

2. The Chapter 13 statement prepared by Ms. Coleman listed the three prior Chapter 13 cases, *Jones I, III* and *IV*, but failed to mention the debtor's prior Chapter 7 case, *Jones II*.

3. No payments of any kind were made under *Jones V*.

4. On September 21, 1983, *Jones V* was dismissed at the debtor's request.

**F. *Jones VI* (Chapter 7 Petition)**

1. On April 6, 1983, while *Jones V* was still pending, debtor represented by Ms. Coleman, filed his current Chapter 7 petition (LA No. 83–05687 BR).

2. The Statement of Affairs prepared by Ms. Coleman listed three of debtor's prior Chapter 13 cases *Jones I, III* and *IV* but failed to list the debtor's then pending Chapter 13 case in which Ms. Coleman was the debtor's attorney.

3. On May 23, 1983, a complaint for relief from stay was filed by the plaintiffs (LA No. 83–7030 BR). Plaintiffs' complaint was based on the grounds that as of May 19, 1983, the encumbrances against the property totalled approximately $41,890.29 versus the $39,000.00 fair market value of

the property. The plaintiffs also asked for $500.00 sanctions against both the debtor and Ms. Coleman "for their flagrant abuse of the process of the Bankruptcy Court and Bankruptcy Code".

4. Except for the three payments made through the Chapter 13 trustee in *Jones I*, (in 1981), the debtor was delinquent for two and one-half years of payments to the plaintiffs.

5. On May 31, 1983, UFM filed a third complaint for relief from the stay based on the grounds that the debtor had acted in bad faith by repeatedly filing bankruptcy petitions, alternating between Chapter 7 and Chapter 13; and the fact that the debtor was 23 monthly payments in arrears to UFM.

6. On June 1, 1983, debtor filed an answer to both the plaintiffs' and UFM's complaints, however, the debtor offered no reasons why relief from stay should not be granted.

Concerning the request for sanctions, Ms. Coleman attached an affidavit to the answer under penalty of perjury which stated:

"I, Julia C. Coleman, do declare,

1. That on January 25, 1983, the debtor came to my office stating that he had been victimized by a non-attorney who filed a Chapter 13 petition on his behalf but had done so incorrectly causing his Chapter 13 petition to be dismissed.

2. That I filed a 13 to stop the sale of his residence.

3. That after completing the necessary Schedules and Plan it became apparent that debtor would be unable to fund and/or successfully complete a Chapter 13.

4. That I advised debtor to file a Chapter 7 to get relief from his debts; and upon discharge, relief his 13 Petition.

5. That I was unaware that debtor has filed other bankruptcy petitions until I searched his file on May 20, 1983, in conjunction with his Chapter 7 petition."

At the hearing on June 30, 1983, this Court granted both requests for relief from stay, but at the plaintiffs' request delayed the effective date of UFM's relief until July 12, 1983.

It was further ordered that the:

"[D]ebtor shall be bound by this Judgment and Order in any conversion of the above-entitled bankruptcy proceeding or in any subsequently filed bankruptcy proceeding of any nature whatsoever and as to any future Automatic Stays issued relating to plaintiffs' interest in the subject property."

The Court took under submission, plaintiffs' request that the Court impose sanctions of $500.00 each against debtor and debtor's attorney, Julia C. Coleman, for their flagrant abuse of the process of the Bankruptcy Court and Bankruptcy Code.

### DISCUSSION

The practice of filing multiple bankruptcy petitions by a debtor, for the sole purpose of invoking the automatic stay of 11 U.S.C. § 362, has become a serious problem in this District and in other parts of the country. The commonplace scenario is as follows: the debtor files a petition to prevent foreclosure of his residence, or simply to forestall eviction proceedings; the Court will either grant the creditor relief from the stay or simply dismiss the case; the debtor will then file a new petition to further delay the inevitable foreclosure or eviction.

The practice of multiple filings has been particularly flagrant in Chapter 13 cases, due in part to the ability of the debtor, unless the case has been converted, to dismiss the case at any time pursuant to 11 U.S.C. § 1307. In the case before this Court, the debtor did not even bother to dismiss Jones V before filing Jones VI. Further, Jones III, IV and V were filed prior to the involuntary dismissals of Jones II, III and IV respectively. The debtor was represented by Ms. Coleman in both Jones V and VI. The Court finds the conduct of the debtor in filing the six bankruptcy petitions for the sole purpose of delaying the

secured creditors constitutes a clear abuse of the bankruptcy process.

As reprehensible as is the conduct of a debtor who abuses the process, the assisting in this course of action by an attorney, represents a far more serious problem, because an attorney is involved in many cases other than merely the debtor's. As an officer of the Court, attorneys owe an ethical duty to the judicial system not to abuse it.

This Court has the inherent power to impose sanctions on parties and counsel who "wilfully abuse the judicial process". *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766; 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980); *United States v. Blodgett*, 709 F.2d 608, 609 (9th Cir.1983); *Barnd v. City of Tacoma*, 664 F.2d 1339, 1342 (9th Cir. 1982). In addition, the power of this Court to correct abusive practices is found in 11 U.S.C. § 105(a) which provides:

> "The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

■ Bankruptcy Rule 911 which was in effect until replaced by Bankruptcy Rule 9011 on August 1, 1984, provided for "appropriated disciplinary action" against an attorney for a "willful" violation of the Rules providing:

> "The signature of an attorney on any pleading, motion, or application served or filed in a bankruptcy case constitutes a certificate by him that he has read the paper; that to the best of his knowledge, information, and belief, there is good ground to support it; and that it is not interposed for delay or other improper purpose..."

This Court believes that "pleading" in Rule 911 should be interpreted to include the bankruptcy petition and plan. See *In re Whitten*, 11 B.R. 333, 340 (Bkrptcy.D.C. 1981). Rule 9011 further clarifies this provision by applying it to petitions. Rule 9011 provides in pertinent part:

> "Every petition, pleading, motion and other papers served or filed in a case under the Code ... shall be signed by at least one attorney of record in his individual name, whose office address and telephone number shall be stated. The signature of an attorney or a party constitutes a certificate by him that he has read the document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harrass, to cause delay, or to increase the cost of litigation. If a document is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the person whose signature is required. If a document is signed in violation of this rule, the Court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee."

Finally, 28 U.S.C. § 1927 provides that:

> "Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the Court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

■ In her declaration of June 1, 1983, Ms. Coleman indicated that she filed the Chapter 13 to stop the sale of the debtors residence. She also stated "that after completing the necessary Schedules and Plan it became apparent that debtor would be unable to fund and/or successfully complete a Chapter 13." The Plan and Schedules that

Ms. Coleman refers to were filed with the Chapter 13 petition (Jones V) on February 7, 1983. Therefore, counsel knew at the time of the filing of the petition, that the case had no hope of succeeding. Nevertheless, Ms. Coleman signed the plan on February 5, 1983, which provided in part VIII that:

"The Debtor will be able to make all payments and comply with all provisions of the Plan, based upon the availability to the Debtor of the income and property the Debtor proposes to use to complete this Plan."

The Court in *In re Whitten*, 11 B.R. 333, 340 (Bkrtcy.D.C.1981) gave the following warning which is very instructive in the case before this Court:

"[T]his Court hereby unequivocally and emphatically states to both this particular counsel and the Bar at large that this Court will not sanction the filing of a Chapter 13 petition in the future where the only intended goal and the only function to be served is the buying of time. Where the plan to be proposed in connection with the Chapter 13 is one that is not reasonably susceptible to confirmation based on the stated standards of Section 1325, a petition filed to merely seek delay by the protective provisions of the automatic stay found in 11 U.S.C. § 362(a), is not to be deemed a petition filed in good faith within the strictures of Bankruptcy Rule 911."

## CONCLUSION

The filing of Jones V was an abuse of the bankruptcy process warranting the awarding of sanctions against both the debtor and his attorney. The filing of Jones VI was a continuation of the abuse created by the filing of the previous five cases.

Therefore, this Court awards sanctions against the debtor and his attorney Ms. Coleman in the amount of $500.00.

IT IS SO ORDERED.