**In re Earsie WALKER, Debtor.**

**Bankruptcy No. B88–04453.**

United States Bankruptcy Court,
N.D. Ohio.

July 3, 1989.

---

Sidney S. Mallory, Jr., Cleveland Heights, Ohio, for debtor.

Michael F. Lorber, Twinsburg, Ohio, for movant.

## MEMORANDUM OF DECISION

DAVID F. SNOW, Bankruptcy Judge.

This case was dismissed on April 18, 1989 on the motion of Federal National Mortgage Association ("FNMA"). The court retained jurisdiction to consider FNMA's request for sanctions against Mrs. Walker and her attorney, Sidney S. Mallory, Jr., and scheduled an evidentiary hearing for April 25, 1989. Mrs. Walker and Mr. Mallory were the sole witnesses called at that hearing. Based on their testimony, the record in this case and Mrs. Walker's prior cases and the pleadings filed with the court, we conclude that sanctions are appropriate.

Mrs. Walker and her husband, Olin, executed a note and mortgage in the amount of $109,300 (the "Loan") on August 15, 1983 to finance residential property at 33139 Roundtree Place, Solon, Ohio, (the "Residence"). The balance now due FNMA on the Loan exceeds $179,000. During the past four years no payments have been made on the Loan, several foreclosure sales of the Residence have been scheduled by FNMA and three bankruptcy cases have been commenced by Mrs. Walker to stay the sales. The first foreclosure sale was scheduled for January 26, 1987. At that time the Walkers obtained a stay from the state court in which the foreclosure was pending ostensibly to allow them to close a private sale of the Residence. No private sale occurred, however, and the foreclosure sale was rescheduled for May 18, 1987. But on March 30, 1987 Mrs. Walker and her husband filed a Chapter 13 case in this court as case number B87–01045. Although Mrs. Walker testified that she knew that she and her husband were required to make payments to both the Chapter 13 trustee and FNMA, no payments were made to either while that case was pending. Confirmation of the Walkers' plan was denied because the court concluded that the plan was proposed in bad faith. According to the court's records that case was dismissed on July 25, 1987 because the Walkers failed to make required payments and because they failed to propose a feasible plan of reorganization. The Walkers' motion to reinstate the case was denied after an evidentiary hearing by order entered October 13, 1987.

On the same day that the court denied reinstatement of the Chapter 13 case, Mrs. Walker filed case number B87–03637 under Chapter 7. Shortly after that case was filed, Mrs. Walker moved to Alabama for an extended period. She testified that she had gone to Alabama for a relative's funeral, had become ill there and, after her recovery, had decided to stay on because of marital difficulties. During that period she transferred her case to Alabama. The extent to which Mrs. Walker's case was prosecuted in Alabama is not clear, although it does appear that FNMA made some effort to obtain relief from stay in Alabama before Mrs. Walker transferred the case back

to Cleveland upon her return here. Mrs. Walker was granted a discharge in her Chapter 7 case on August 16, 1988. In the meantime FNMA had again obtained relief from the stay through an order entered by this court on August 11, 1988. Its third foreclosure sale was scheduled for Monday, November 28, 1988. Mrs. Walker filed this Chapter 13 case on November 25, 1988 and blocked that sale.

No evidence was presented to explain the Walkers' financial problems. Mrs. Walker is an intelligent, sophisticated woman. The Walkers have apparently operated a real estate brokerage for a number of years and both are generally experienced with the sale and financing of residential real estate. Both Mrs. Walker and her husband, who attended the hearing but did not testify, appeared well and expensively dressed. Apart from the expectancy noted below, no evidence was presented of any change in circumstances which would have enabled Mrs. Walker to fund a plan in this case when the Walkers had been unable to do so in their prior Chapter 13 case. In fact her testimony indicated that any change in her earnings had been for the worse.

Both at the April 25 evidentiary hearing and at prior hearings, it was indicated that Mr. Walker had, or was about to, come into a substantial inheritance, but it appears clear that they had no intention of paying FNMA the full amount due on the Loan, or in fact making any further payments to FNMA, until they had effected a workout reducing the amount owed to the value of the Residence.

Mrs. Walker testified that the Residence is worth about $140,000 or about $39,000 less than the amount owed on the Loan. She testified that she believed that it would be in FNMA's interest to accept a workout at something close to market value rather than to foreclose. She said that she didn't worry about meeting plan payments because she intended to "wipe out" FNMA by re-financing rather than paying the existing mortgage arrearages. Moreover, she said that Mr. Walker had applied for a loan of $140,000 with which to fund a payoff to

FNMA. It is clear, therefore, that Mrs. Walker filed this case without any intention of paying the Loan.

It also seems fair to conclude that she had no intention of reinstating the FNMA mortgage in connection with her Chapter 7 case. There is nothing in the record to indicate that she sought to work out a reinstatement agreement with FNMA or to redeem the Residence in connection with that case. Instead she filed the present Chapter 13 case to stave off foreclosure.

So far the Walkers have successfully utilized three bankruptcy cases to hold their mortgagee at bay without making any mortgage payments. The net result of this strategy has been that for the last four years they have lived rent-free in the Residence which by their own admission is now worth less than the mortgage balance it secures.

■ In light of the foregoing facts we believe that the dismissal of this case would invoke the 180–day freeze on Mrs. Walker's future filings mandated by section 109(g)(1) of the Bankruptcy Code. But under these circumstances we believe that further sanctions are necessary and appropriate.

Chapter 13 of the Bankruptcy Code affords the debtor not only a virtually complete discharge, but nearly unlimited access to the bankruptcy process if future filings are necessary. Repeat filings are expressly constrained only by section 109(g) of the Bankruptcy Code and then only for 180 days where the debtor has willfully failed to obey court orders or prosecute her case, or has voluntarily dismissed the case in the face of a motion for relief from stay. In addition section 349 authorizes the court to punish abusive or bad faith filings by dismissing a case with prejudice. *Lerch v. Federal Land Bank (In re Lerch),* 94 B.R. 998 (N.D.Ill.1989). By its terms, however, section 349 only denies the debtor discharge of the debts scheduled in that particular case and does not deny the debtor future access to the bankruptcy court, except as provided in section 109(g). *But see In re Lerch,* 85 B.R. 491 (Bankr.N.D.Ill. 1988) *Lerch v. Federal Land Bank, aff'd,*

94 B.R. 998 (D.C.N.D.Ill.1989); *In re Bradley*, 38 B.R. 425 (Bankr.C.D.Cal.1984); *In re Petro*, 18 B.R. 566 (Bankr.E.D.Pa.1982). In a case like this, where the debtor has already received a discharge from the FNMA debt in her Chapter 7 case, section 349, although reflecting an intent to discipline improper bankruptcy filings, does not provide an explicit answer.

The Sixth Circuit Court of Appeals has not specifically addressed this situation. However, in a number of Chapter 13 cases that court has made it clear that Chapter 13 may not be utilized by the debtor to take unfair advantage of its provisions. *In re Caldwell*, 851 F.2d 852 (6th Cir.1988); *In re Doersam*, 849 F.2d 237 (6th Cir.1988); *In re Okoreeh–Baah*, 836 F.2d 1030 (6th Cir.1988); *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982). In *Memphis* the court said "Obviously, the liberal provisions of the new Chapter 13 are subject to abuse, and courts must look closely at the debtor's conduct before confirming a plan." 692 F.2d at 432. Mrs. Walker's conduct in this and her prior cases is in our judgment abusive.

 First, it should be made clear that there is nothing wrong with a debtor invoking Chapter 13 to block foreclosure of the debtor's home. This is precisely the motivation for many if not most Chapter 13 filings. "Filing a bankruptcy petition to prevent foreclosure if undertaken pursuant to a legitimate effort at reorganization is not reprehensible and is in accord with the aim of the Bankruptcy Code." *Mortgage Mart, Inc. v. Rechnitzer (In re Chisum)*, 847 F.2d 597, 598 (9th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988). However, the price of Chapter 13's benefits, as this quote makes clear, is to commit to a plan of reorganization. The debtor must devote her available income, usually for three years or more, to pay her creditors—a form of voluntary servitude and a high price indeed. Where, as here, the debtor has no intent to make such commitment and employs the bankruptcy process as a tactic to prolong her rent-free occupancy and to force her mortgagee to re-structure the loan, we believe that the system is being seriously abused. *In re Bystrek*, 17 B.R. 894 (Bankr.E.D.Pa.1982); *In re Whitten*, 11 B.R. 333 (Bankr.D.C. 1981).

Obviously the court should not be quick to discern abuse or bad faith from a debtor's failure to fund her plan. By definition the Chapter 13 debtor is hard-pressed financially. In many cases she may be uneducated and less than ordinarily capable of managing her affairs or in coping with often indifferent representation in the recondite world of bankruptcy. Moreover, sickness, layoff or a myriad of other crises may stretch meager resources beyond the breaking point and frustrate plan compliance. But in this case we have none of these. Instead we have an intelligent, sophisticated debtor, a history of three bankruptcy filings in four years, no payments to the trustee or mortgagee and the Debtor's testimony that she didn't intend to fund a plan at all but only to buy time to refinance her mortgage. In effect she has bought four years in the Residence at FNMA's expense for the price of three $90 filing fees and whatever she paid her lawyer. In our view this behavior is sanctionable under section 105 of the Code, *In re Jones*, 41 B.R. 263 (Bankr.C.D.Cal.1984); *In re Damien*, 35 B.R. 685 (Bankr.S.D.Fla.1983), as well as under Rule 9011. *In re Whitten*, *supra*.

In initiating this case Mrs. Walker signed and filed with the court a petition for the purpose of improperly delaying FNMA's foreclosure of its mortgage. Bankruptcy Rule 9011 provides that the signature of a party on a pleading constitutes a certificate that the pleading has not been interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation. *See In re Kinney*, 51 B.R. 840 (Bankr.C.D.Cal.1985). The rule goes on to require the court on motion or on its own initiative to impose upon the violator an appropriate sanction "which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee."

Counsel for FNMA has filed with the court an affidavit listing its expenses in

connection with these bankruptcy cases and FNMA's repeated foreclosure attempts in an aggregate amount of $2,150.00. In fixing an appropriate sanction, the court has also taken into account both the need to deter future abusive behavior, *In re Kinney, supra,* as well as Mrs. Walker's apparent ability to pay, *Jackson v. O'Hara, Ruberg, Osborne and Taylor,* 875 F.2d 1224 (6th Cir.1989). Under the circumstances we have fixed the sanction at $2,000. Even so Mrs. Walker will have paid very little for her years of rent-free occupancy.

Although it is clear to this court that Mrs. Walker used the bankruptcy system improperly, no evidence was presented that her attorney, Mr. Mallory, should be held responsible for her actions. Accordingly, the request for sanctions against Mr. Mallory is denied.

Based on the foregoing IT IS ORDERED THAT:

1. Mrs. Walker shall not file any case under the Bankruptcy Code for a period of one year from and after April 18, 1989, the date on which this case was dismissed.

2. Mrs. Walker shall within 60 days pay to the Clerk of the Bankruptcy Court the sum of $2,000.00 which amount shall be paid over to FNMA in respect of its costs and expenses.