**In re Eliscio PEREZ and Gregoria Perez, Debtors.**

**Bankruptcy No. 84–00224–H2–1.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Sept. 5, 1984.

Charles E. Long, Woodard, Hall & Primm, P.C., Houston, Tex., for Suburban Coastal Corp.

Hallie W. Gill, Houston, Tex., for debtors.

### Memorandum Opinion

R. F. WHELESS, Jr., Bankruptcy Judge.

### FACTS

This matter involves the assessment of excess costs, expenses and attorneys' fees against Hallie W. Gill ("Debtors' Counsel") under 28 U.S.C. § 1927, Rule 11 of the Federal Rules of Civil Procedure, and Bankruptcy Rule 9011. Suburban Coastal Corporation ("Suburban Coastal") seeks to recover from Debtors' Counsel the attorneys' fees and expenses incurred by it in efforts to recover its collateral in the Debtors' three successive Chapter 13 cases.

On June 8, 1984, this Court held a hearing on the motion of Suburban Coastal to recover under 28 U.S.C. § 1927 against Debtors' Counsel. There appears to be little dispute regarding Mr. Gill's actions during the course of the Debtors' three Chapter 13 cases. Suburban Coastal held a deed of trust on the Debtors' residence in Houston, Texas, to secure its mortgage loan to the Debtors. The Debtors ceased paying their monthly mortgage payments in August, 1982. Suburban Coastal accelerated the Debtors' obligation and posted their residence for foreclosure sale in March, 1983. The parties stipulated and agreed that Debtors' Counsel filed the Debtors' first Chapter 13 case (the "First Case") in this Court in February, 1983 (Case No. 83–00869–H1–3), some one or two weeks before the scheduled foreclosure sale.

In response to this Court's initial questioning, Mr. Gill acknowledged that both Debtors lacked a source of regular income at the time of the filing of the First Case. Later, Mr. Gill indicated that he believed that Mr. Perez may have been receiving some workers' compensation at the time of the filing of the First Case. Although there was some question whether the Debtors ever filed a Chapter 13 statement in the First Case, it is clear that the Debtors' plan was filed untimely in June, 1983, and that the Debtors scheduled only two creditors, Fingers Furniture and Suburban Coastal. Mr. Gill's testimony indicated that the Debtors' plan was filed shortly after Suburban Coastal filed its complaint to lift the automatic stay and that no actual income was used to serve as the basis of the plan.

It appears to the Court that the plan filed in the First Case lacked any funding from actual income because the Debtors did not have any source of regular income.

After the Debtors failed to comply with the Court's instructions that they make a small payment to Suburban Coastal in July, 1983, the Court signed an order lifting the automatic stay as to Suburban Coastal on August 8, 1983. After the Court's ruling terminating the stay, but before the signing of the order effecting the ruling, Debtors' Counsel filed a motion for voluntary dismissal on August 2, 1983. Suburban Coastal, unaware of the pending motion of dismissal or the signing of the order dismissing the First Case on August 29, 1983, caused the Debtors' residence to be posted again for foreclosure sale in September, 1983.

On September 2, 1983, four days after the dismissal of the First Case, Mr. Gill filed the Debtors' second Chapter 13 case (the "Second Case") in this Court (Case No. 83-03747-H3-3), thereby preventing Suburban Coastal from foreclosing upon the Debtors' residence on the first Tuesday in September, 1983 (September 6th). It is clear to this Court that the Debtors lacked regular income on September 2, 1983.

Again the Debtors scheduled the same two creditors and filed their plan untimely. Suburban Coastal responded to the reimposition of the automatic stay by filing a motion to lift the stay and seeking an expedited hearing on this motion. In early October, 1983, this Court again lifted the stay as to Suburban Coastal and through inadvertence, subsequently signed two orders so lifting the stay in the Second Case.

In October, 1983, Debtors' Counsel again filed a motion for voluntary dismissal of the Second Case after the Court's ruling lifting the stay as to Suburban Coastal but before the signing of the first order effectuating this ruling. However, Judge Peden apparently refused to sign the order of dismissal submitted by Debtors' Counsel, indicating his refusal by noting on the proposed order of dismissal that it was not to be signed.

For reasons never adequately explained to this Court, Mr. Gill filed a second motion for voluntary dismissal in December, 1983. Debtors' Counsel admitted that when he filed the second motion for dismissal in December, 1983, he knew that Suburban Coastal had again caused the property to be posted for foreclosure (in January, 1984) and that Judge Peden had refused to sign the initial order of dismissal. This Court's file shows that the second motion for voluntary dismissal filed by Debtors' Counsel omitted any information about the earlier presentation to Judge Peden and his refusal to sign the initial order of dismissal.

Before Mr. Gill obtained voluntary dismissal of the Second Case, the Debtors had failed to obtain confirmation of their plan and had failed to pay anything to Suburban Coastal or Fingers Furniture. The Debtors lacked a source of regular income throughout all but one week of the Second Case.

During the morning of January 3, 1984, Debtors' Counsel filed the instant case for the Debtors: his third and final Chapter 13 case (the "Third Case"), less than one year after he had filed the First Case. Suburban Coastal, again unaware of the voluntary dismissal of the Second Case and the filing of the Third Case, purchased the Debtors' residence in the afternoon on January 3rd, thereby consummating the foreclosure sale in unknowing violation of the automatic stay. Once again Mr. Gill filed a "bare bones" petition for the Debtors, listing Suburban Coastal and Fingers Furniture as their only two creditors.

Suburban Coastal responded to the Third Case by seeking either dismissal of the case with prejudice or termination of the stay. In the course of this stay litigation, Suburban Coastal amended its motion to include a request for assessment against Debtors' Counsel under 28 U.S.C. § 1927. In March, 1984, Judge Peden dismissed the Third Case with prejudice to the refiling of another bankruptcy case by the Debtors for ninety days, thereby permitting Suburban Coastal to finally obtain proper foreclosure of its collateral in May, 1984.

During the course of this Court's questioning of Mr. Gill, he acknowledged that the Debtors had no source of regular income on the date that he filed the Third Case and that there had not been any material change in the Debtors' circumstances between the lifting of the stay in the Second Case and the filing of the Third Case. Debtors' Counsel also acknowledged his awareness of all three of Suburban Coastal's pending foreclosure sales and the legal impact of the successive filings on these foreclosure efforts. He also admitted that the Debtors had no ability to fund a plan during the course of the First and Third Cases.

Although Debtors' Counsel had filed untimely plans for the Debtors in the first two Chapter 13 cases, he indicated that he did not bother to file a plan or Chapter 13 statement in the Third Case. Needless to say, the Debtors failed again to obtain confirmation of a plan. The Debtors failed to pay anything to Suburban Coastal from August, 1982 until Suburban Coastal foreclosed upon the residence in May, 1984.

## DISCUSSION

From the inception of the First Case to the dismissal of the Third Case, Mr. Gill's conduct displays a "serious and studied disregard for the orderly process of justice." *Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163 (7th Cir.1968). By repeatedly failing to comply with the rules of bankruptcy procedure, Mr. Gill made full use of the difficulties caused by the Court's crowded docket. Even more importantly, Debtors' Counsel utilized the inherent potential for abuse presented by the right of voluntary dismissal of 11 U.S.C. § 1307.

Unsatisfied with one bite of the apple and unwilling to appeal properly the order of this Court lifting the automatic stay in the First Case, Mr. Gill obtained the dismissal of the First Case so that he could again forestall Suburban Coastal's foreclosure sale set for September 6, 1983. Despite this Court's direct inquiries, Debtors' Counsel could not explain what change, if any, in the Debtors' circumstances occurred in the four days between the dismissal of the First Case and the filing of the Second Case.

It is clear to this Court that the Debtors' circumstances did not change in the four days between these cases. It is equally clear that Debtors' Counsel knew that at the time of the filing of the Second Case that the Debtors were not qualified to be Chapter 13 debtors under 11 U.S.C. § 109 and that at this time they were financially unable to fund a plan. From Mr. Gill's own testimony, it is apparent that his representation of Mr. Perez in his workers' compensation claim gave him a good impression of Mr. Perez's health and inability to work and the Debtors' general financial situation.

Debtors' Counsel asserted that he may have had a duty to file the Second Case and that he feared personal liability in the event he refused to file the Second Case. Debtors' Counsel did not, however, state any actual duty that he had to file a Chapter 13 case for which he *knew* the Debtors were not and could not be qualified and further he did not state any factual basis for his fear of suit for failure to file the Second Case.

 This Court concludes that Mr. Gill's professional duty to represent the Debtors zealously does not extend to the filing of groundless Chapter 13 cases for the purpose of preventing a secured creditor who properly obtained a termination of the automatic stay from obtaining the foreclosure sale of its collateral. Moreover, this Court rejects Mr. Gill's implied contention that he had actual basis for fear of suit for refusal to file the Second and Third Cases. The Code of Professional Responsibility specifically recognizes that an attorney's obligation to represent his client does not extend to asserting frivolous legal positions.

Continuing his prolongation of these cases, Debtors' Counsel obtained dismissal of the Second Case after this Court, by and through Judge Phil Peden, had terminated the stay again as to Suburban Coastal in

the Second Case. Intentionally circumventing Judge Peden's refusal to permit the Debtors to voluntarily dismiss the Second Case, Debtors' Counsel filed a second motion for voluntary dismissal. As an officer of the Court, Mr. Gill owed this Court an adequate explanation for the circumstances surrounding his filing of the second motion for voluntary dismissal in the Second Case in December, 1983. As the record reflects, Mr. Gill failed to give this Court such an explanation.

Debtors' Counsel filed the Third Case for the purpose of preventing Suburban Coastal from foreclosing upon its collateral, knowing that Debtors were still not qualified under 11 U.S.C. § 109 and that Debtors were unable to fund a plan. By Mr. Gill's own testimony, it is clear that there was no change in the Debtors' financial or employment circumstances in the period from the termination of stay in the Second Case to the filing of the Third Case.

■ Under the evidence, this Court concludes that Debtors' Counsel willfully abused the judicial processes available to debtors by obtaining the dismissal of the First and Second Cases and by filing the Second and Third Cases. The Court finds that Mr. Gill filed the Second Case and the Third Case without any basis for the purpose of avoiding the termination of the automatic stay in the First Case. Neither the Second Case nor the Third Case were filed in good faith, but were filed solely to prevent Suburban Coastal from foreclosing upon the property in question. The Court further finds that conduct of Debtors' Counsel unreasonably and vexatiously multiplied proceedings before the Court and that the attorneys' fees and out-of-pocket expenses incurred by Suburban Coastal in the prosecution of its rights in the Second and Third Cases were "excess ... expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

The Court further finds that the petitions signed and filed by Mr. Gill in the Second and Third Cases and the motions for voluntary dismissal signed and filed by him in the First and Second Cases violated Rule 11 of the Federal Rules of Civil Procedure and Bankruptcy Rule 9011. Because of his willful disregard for the prohibitions of these Rules, Suburban Coastal incurred reasonable attorneys' fees and expenses in the Second and Third Cases to enforce its rights under its deed of trust.

■ It is well settled that this Court has inherent authority to assess attorneys' fees and expenses "against counsel who willfully abuse judicial processes," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2465, 65 L.Ed.2d 488 (1980). Section 1927 and Rules 11 and 9011 provide additional bases for awarding sanctions against attorneys who file pleadings and motions for improper purposes and whose conduct thereby unreasonably and vexatiously multiplies matters before the Court. Recent opinions of other bankruptcy courts show that improper multiple filings have become all too commonplace. *In re Trust Deed Center, Inc.*, 36 B.R. 846 (Bankr.C.D.Cal.1984); *In re Bayport Equities Corp.*, 36 B.R. 575, 11 Bankr.Ct.Dec. (CRR) 671 (Bankr.C.D.Cal.1983); *In re Eck*, 34 B.R. 11 (Bankr.M.D.Fla.1983); *In re Johnson*, 24 B.R. 832 (Bankr.E.D.Pa. 1982); *In re Bystrek*, 17 B.R. 894 (Bankr.E. D.Pa.1982).

Suburban Coastal incurred reasonable attorneys' fees and expenses in the sum of $5,290.00 in its efforts in the Second and Third Cases to reacquire the relief that the Court granted it in the First Case. Therefore, this Court awards this sum to Suburban Coastal from Debtors' Counsel and instructs that he pay said sum to Suburban Coastal on or before ninety days from the date hereof. An order effectuating the ruling herein shall be entered herewith.

This opinion constitutes this Court's findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure as incorporated by Bankruptcy Rules 9014 and 7052.