**In re Byron L. KINNEY, Debtor.**

**Bankruptcy No. LAX 84–12185–GM.**

United States Bankruptcy Court,
C.D. California.

July 30, 1985.

---

J. Sheldon Capeloto, Smith and Smith, Encino, Cal., for creditor.

Lois White for Julia Coleman, Atty. at Law, Compton, Cal., for defendant.

## MEMORANDUM OF DECISION RE SANCTIONS

GERALDINE MUND, Bankruptcy Judge.

### I. INTRODUCTION

Much has been written concerning a recent plague upon the bankruptcy community, the "new debtor syndrome." Much more is in print chronicling the epidemic of abusive multiple filings. This case principally involves one attorney, one family, one piece of real property, one transfer, but ten *ad seriatim* case filings.[1] The uniqueness of this case is that a group of individuals (separate adult members of a family) have acted in such a way as to lose their individuality and constitute one debtor for purposes of the Bankruptcy law. Further, the attorney in question acted without specific intent to violate her duties, but believed that she was acting in the best interests of her clients.

### II. FACTUAL BACKGROUND

Prior to April 1, 1982, members of the Kinney family purchased commercial real property located at 1001, 1016, 1020 and 1024 E. Compton Boulevard in Compton, California (the Compton property). Record

---

1. The magnitude of this abuse was allowed to occur partially because these 10 filings involved cases before 6 different judges. Therefore, no single judge was aware of the interlinkage of the debtors until Kinney # 8 was filed.

title to those properties was held by Napoleon and Mary Kinney, husband and wife as joint tenants, and Samuel Kinney, their son, as a single man.

On January 5, 1983, after the Kinney children had all obtained their California real estate salesperson licenses, the record owners executed a grant deed on the Compton property naming as grantees themselves—Napoleon, Mary and Samuel—and three of the adult children: Priscilla, Bryan and Bruce. This grant deed was not recorded until November 15, 1983.

On April 11, 1982, the Kinneys obtained a six-month, interest-only loan of $70,000 from Imperial Bank. The loan was secured by two deeds of trust which encumbered all four parcels. A prior and senior deed of trust was held by an individual, Kenneth Hopp, on the property located at 1001 E. Compton Boulevard.

The maturity of the Imperial Bank loan was extended several times during late 1982 and early 1983 to facilitate the Kinneys in obtaining an SBA-guaranteed loan. When the SBA eventually disapproved the Kinney application, Imperial Bank refused to further extend the maturity of the loan. The loan became all due and payable on June 1, 1983.

Members of the Kinney family filed ten (10) bankruptcy petitions during the 25-month period starting September 14, 1982 and ending October 9, 1984. Every filing but two (2) by Napoleon, Jr. involved the Compton property. Similarly, attorney Julia Coleman had some involvement in 8 of the 10 filings. Below is a summary of these 10 bankruptcy cases.

(1) *KINNEY #1*—(LA 82–15707–RO) Chapter 7 filed on 9/14/82 by Napoleon, Jr., in pro per. Julia Coleman substituted in as attorney of record on 2/10/83. Case closed 4/20/83 after discharge granted.

(2) *KINNEY #2*—(LA 82–16239–JB) Chapter 7 filed on 9/27/82 by Samuel in pro per. Julia Coleman substituted in as attorney of record on 1/24/83. First T.D. holder, Hopp, filed a state judicial foreclosure proceeding. Case dismissed on 5/10/84 after conversion to Chapter 13 at the discharge hearing.

(3) *KINNEY #3*—(LAX 83–03119–WL) Chapter 13 filed 2/22/83 on behalf of Napoleon, Jr., by Julia Coleman. Case dismissed 10/27/83 on debtor's motion.

(4) *KINNEY #4*—(LAX 83–06672–RM) Chapter 13 filed on 4/13/83 on behalf of Samuel, by Julia Coleman. Case dismissed 6/20/83 on the Court's motion for failure to propose a plan.

(5) *KINNEY #5*—(LAX 83–21243–WL) Chapter 13 filed 11/16/83 by Priscilla in pro per, Julia Coleman substituted in as of attorney of record on 1/19/84; Imperial Bank had previously scheduled its foreclosure sale for the day of filing. Case dismissed 4/27/84 on the Court's motion for failure to propose a feasible plan.

(6) *KINNEY #6*—(LAX 84–01345–RM) Chapter 13 filed 1/17/84 by Samuel in pro per. Filed 5 days after Imperial Bank granted relief from stay in Priscilla's case (Kinney #5). Dismissed 2/17/84 for failure to file statement of affairs and plan.

(7) *KINNEY #7*—(LAX 84–04023–WL) Chapter 13 filed 2/14/84 on behalf of Napoleon, Sr. and Mary, by Julia Coleman. Case dismissed on 3/1/84.

(8) *KINNEY #8*—(LAX 84–03825–BR) Chapter 11 filed 3/2/84 on behalf of Napoleon, Sr. and Mary, by Julia Coleman; filed 1 day after voluntary dismissal of Kinney #7.

(9) *KINNEY #9*—(LAX 84–12185–GM) Chapter 13 filed 6/25/84 by Bryan, in pro per (incorrectly identified on the petition as Bryon). Julia Coleman prepared petition and filed adversary complaint. Filed on date of Imperial Bank's rescheduled foreclosure sale. Bryan dismissed case on 7/27/84; reopened by mutual consent.

(10) *KINNEY #10*—(LAX 84–18794–GM) Chapter 13 filed 10/9/84 by Samuel in pro per. Case converted to Chapter 7.

Request to Dismiss denied. Reconsideration of Request to Dismiss denied.

*Kinney numbers 1 and 3* were both filed by Napoleon, Jr. Kinney # 1 did result in a discharge being granted on February 16, 1983 to Napoleon, Jr. Kinney # 3 culminated in a confirmed Chapter 13. plan. This case was dismissed on October 27, 1983 on the debtor's own motion prior to any substantial consummation of the plan. Neither of these cases filed by Napoleon, Jr., involved the Compton Boulevard property, though attorney Coleman was attorney of record in both cases.

*Kinney # 2* was the first of four filings by Samuel. This first petition by Samuel was filed six days after the holder of the first deed of trust on the 1001 E. Compton property, Kenneth Hopp, filed a state court judicial foreclosure proceeding. The automatic stay of 11 U.S.C. § 362 was invoked for the first time to protect' the Compton property.

On January 5, 1983, the grant deed seeking to add three of the remaining Kinney children to title was prepared and signed by the original vestees. The grant deed was not recorded at this time. While Samuel executed this grant deed during the pendency of Kinney # 2, no notice was sent to creditors pursuant to 11 U.S.C. § 363 nor application made to the Court to transfer the property out of the ordinary course of business. Nor was the Chapter 7 trustee informed of these dealings.

On January 24, 1983, the date scheduled for Samuel's Chapter 7 discharge hearing, attorney Coleman substituted in as attorney of record and requested the conversion of the case to Chapter 13. The request was granted and a plan and statement of affairs was filed.

At the Chapter 13 confirmation hearing of Kinney # 2 on June 20, 1983, Ms. Coleman appeared and requested the dismissal of the case. Though the dismissal was granted by the Court, the order of dismissal was never lodged by Attorney Coleman. The case finally was dismissed on May 10, 1984 by an order prepared by the Standing Chapter 13 Trustee pursuant to 11 U.S.C. § 1307(c).

*Kinney # 4* was Samuel's second petition under Chapter 13 and was filed by Ms. Coleman on April 13, 1983 during the pendency of Kinney # 2, of which she was then attorney of record. The new Chapter 13 Statement and Master Mailing List failed to list Imperial Bank as a creditor or give them notice of this case. No feasible plan was filed, and the Court dismissed Kinney # 4 on June 20, 1983.

On June 24, 1983, Imperial Bank recorded a notice of default under the deed of trust. Eventually a Notice of Sale was published to enable Imperial Bank to conduct a non-judicial foreclosure sale of the Compton property. The sale was scheduled for November 16, 1983. At 4:00 P.M. on November 15, 1983, Priscilla recorded the previously unrecorded grant deed, which granted her an interest in the Compton property. Because the Clerk's office was closed when she then attempted to file bankruptcy, she returned the next morning and filed the face sheet Chapter 13, *Kinney # 5*, which she and her brother Samuel had prepared. The automatic stay was invoked for the second time on the Compton Street property.

On January 12, 1984, Imperial Bank filed a motion for relief from the automatic stay against Priscilla, Napoleon, Sr., and Mary. On January 19, 1984, Julia Coleman substituted into Kinney # 5 as attorney of record. The Court granted Imperial Bank's motion for relief with prejudice finding that Priscilla had filed her petition in bad faith.

On January 17, 1984, Samuel filed his third bankruptcy petition under Chapter 13. The automatic stay was invoked on the Compton property for the third time. *Kinney # 6* was a "face sheet" filing submitted five days after Imperial Bank filed its motion for relief from the automatic stay against Priscilla.

*Kinney # 7* was filed on February 14, 1984 by Julia Coleman on behalf of Mary and Napoleon, Sr. The automatic stay was

invoked for the fourth time on the Compton property.

On February 17, 1984, Imperial Bank filed a motion for relief from the automatic stay, alleging that Kinney # 7 was filed in bad faith. The Court granted this motion on February 22, 1984, lifting the automatic stay with prejudice, to be effective in all Chapter 13 cases filed by Napoleon, Sr. and Mary for the subsequent six months. On March 1, 1984, this case (Kinney # 7) was dismissed at the request of the debtors.

*Kinney # 8* (a Chapter 11) was filed on behalf of Napoleon, Sr. and Mary Kinney one day after their Chapter 13 case was dismissed, and shortly after Imperial Bank's motion for extended relief from automatic stay in Chapter 13 filings was granted. The automatic stay was invoked for the fifth time on the Compton property. Julia Coleman was again the attorney of record.

Several creditors not revealed in Kinney # 7 were identified on the master mailing list of Kinney # 8.

Imperial Bank filed a motion for relief from the automatic stay in Kinney # 8. On May 5, 1984, the parties entered into a stipulation which relieved Imperial Bank from the automatic stay, but precluded them from holding a foreclosure sale prior to June 23, 1984. The stipulation further provided that the relief granted would be binding on all current owners of the subject property, as well as anyone taking ownership under them. No objection to the form or content of the stipulation was ever made. The foreclosure sale planned pursuant to the stipulated order was scheduled for June 25, 1984.

On that very day *Kinney # 9* was filed by another of the Kinney children grantees, Bryan. Ms. Coleman, though not attorney of record, was paid to, and did, prepare the petition. The automatic stay was invoked for the sixth time on the Compton property.

Despite the Kinney # 9 filing, and with reliance on the stipulation in Kinney # 8, the non-judicial foreclosure sale of Imperial Bank was conducted on June 25, 1984. Imperial Bank purchased the property at the sale.

On June 28, 1984, Bryan filed, through Ms. Coleman, a Complaint to Set Aside the Foreclosure Sale conducted on June 25, 1984 by Imperial Bank. On July 25, 1984, this complaint was dismissed after the Court ordered the automatic stay to be annulled and the foreclosure sale validated.

Although Kinney # 9 was dismissed at the request of the debtor, it was later reopened by consent of the debtor. It was reopened in an attempt to straighten out the problems attendant to both the Court and all the Kinney debtors now before it.

*Kinney # 10* was filed on October 9, 1984 by Samuel, his fourth petition under Chapter 13. This case was ultimately converted to Chapter 7 by the Court. Samuel's requests to dismiss the Chapter 7 have all been denied by this Court up to the present time.

More than 7 months after the foreclosure sale was held, and more than 3 months after the state court signed an unlawful detainer order to leave the property, Kinney # 8, # 9, and # 10 remained open, and the Kinneys still had not vacated the property.

Imperial Bank, as part of its action to validate the foreclosure sale, sought sanctions against Bryan Kinney and attorney Julia Coleman for abuse of the bankruptcy system. That matter was severed for trial and an evidentiary hearing was held October 29, 1984.

### III. ANALYSIS

The Bankruptcy Code imposes on debtors and their attorneys an ethical duty not to abuse the judicial system. While a debtor may lawfully avail himself of the protections of the automatic stay of 11 U.S.C. § 362, he is barred from filing bankruptcy petitions for the predominant purpose of reimposing the automatic stay after a motion for relief from automatic stay has been granted in a prior case between the parties. To allow the mortgagee to manip-

ulate the judicial process through needless delays of the foreclosure is a fraud on creditors. *In re Bystrek*, 17 B.R. 894 (Bankr.E.D.Pa.1982). Where, as here, debtors utilize the automatic stay without the intent or ability to reorganize their financial activities or effectuate a realistic repayment plan, they are abusing the bankruptcy system.

## BAD FAITH

■ The Bankruptcy Code implicitly and explicitly imposes on debtors a duty of good faith in filing and maintaining bankruptcy actions. In a Chapter 7 case, the debtor must be willing to cooperate with the Trustee to account for and liquidate his estate for the benefit of his creditors. 11 U.S.C. § 727(a). In a Chapter 11 or 13 reorganization, good faith requires that there must be a reasonable expectation on the part of the debtor that he can successfully reorganize and he must undertake efforts to carry out the reorganization. *In re Thirtieth Place, Inc.*, 30 B.R. 503, 506 (Bankr. 9th Cir.1983); *In re Whitten*, 11 B.R. 333, 334 (Bankr.D.C.1981).

■ As a general proposition the Court must determine whether litigation is being pursued in good faith by considering all of the facts and circumstances before it. *In re Thirtieth Place, Inc.*, 30 B.R. at 505; *Loeb Apartments, Inc. v. Malwitz*, 89 F.2d 461, 463 (7th Cir.1937).

During the pendency of these ten bankruptcy cases, eight of which involved Julia Coleman as attorney in one capacity or another, no intent to repay Imperial Bank was ever revealed. No mortgage payments were ever made, and in all of these cases, no feasible repayment plans were filed or complied with. The repeated filings did little more than delay the scheduled foreclosure sales, and the filings were timed to successfully stave off foreclosure.

The Kinneys testified in unanimity that their bankruptcy filings were made in good faith and for reasons independent of Imperial's impending foreclosure of the Compton property. They claimed that the filings of Priscilla and Bryan, each of which oc-

curred on the day on which one of the Imperial foreclosure sales had been scheduled, were not for the purpose of stopping either of the foreclosure sales. The Court was not so convinced.

## CONCERTED ACTIONS

There is no question that eight of the ten bankruptcies were filed by the different members of the Kinney family in order to obtain the automatic stay as to the Compton property. Their concerted, intertwined efforts to prevent Imperial Bank from realizing on its security can be viewed as the acts of one entity, with many individuals carrying out these acts.

While some, or all, of the individual bankruptcy filings in isolation may have been lesser breaches of the Bankruptcy Code due to a repeated absence of intent to reorganize or repay creditors, the combined actions of all of the family members constitute a gross abuse of the law's requirement of good faith. Since five of the Kinneys who filed were owners of the encumbered property, the bankruptcy filings of each of them stayed Imperial Bank's efforts to foreclose on that property. In substance, the Kinneys staved off the repeated efforts of both the Bank and this Court to curtail the abuses of 11 U.S.C. § 362 present here by acting together in timing their bankruptcy filings.

By treating this family as one entity for purposes of these multiple bankruptcy filings, justice would have been served more expeditiously. Orders as to one family member could be res judicata as to the other members of the "entity" in subsequent actions. Here, the names changed when each of the new actions was filed, but in substance the parties and issues did not. A common intent to violate the law has been shown in this case.

■ Here, the actions of each family member can be imputed to the rest of the family due to the unity of interest and concert of action. If the question of criminal conspiracy were pertinent, each family member would be liable for the acts of the

others in furtherance of this scheme, for the Court infers mutual consent and conformance to a contemplated pattern of conduct. *Esco Corporation v. United States*, 340 F.2d 1000, 1008 (9th Cir.1965). In the presence of such a scheme, the individuality of each of the debtors is blurred, revealing one common entity with five operatives. Under such circumstances, orders binding one family member should bind the others as well. Pursuant to 11 U.S.C. § 105, the Court is able to bind parties even not before it when such a scheme is demonstrated by strong and clear evidence.

Among the remedies available to combat bad faith filings are dismissal of the action, and relief from the automatic stay provided by 11 U.S.C. § 362. Many courts, however, have encountered resourceful debtors who have utilized various strategies to sidestep efforts to prevent bad faith cases from hindering the rights of creditors. For example, in *In re Jones*, 41 B.R. 263 (Bankr. C.D.Cal.1984), the debtor filed five bankruptcy petitions after relief from stay had been granted and/or dismissals obtained in previous cases.[2] Another similar situation involved a filing by the wife after the Court had granted the creditor relief from the automatic stay in the prior bankruptcy of the husband. *In re Wong*, 30 Bankr. 87, 89 (Bankr.C.D.Cal.1983). Other debtors have participated in the so-called "new debtor syndrome," wherein property subject to foreclosure is transferred to new entities, which immediately file bankruptcy to stay scheduled sales. Cf. *In re Trust Deed Center*, 36 B.R. 846 (Bankr.C.D.Cal. 1984); *In re Thirtieth Place, Inc.*, 30 B.R. 503.

Congress moved to combat these increasingly prevalent abuses of the Bankruptcy Code by enacting 11 U.S.C. § 109(f) in October of 1984. Section 109(f) seeks to limit bad faith filings by preventing individuals from being debtors for a period of 180 days if their case was dismissed for willful failure to prosecute, or if a voluntary dismissal is obtained subsequent to the filing of a motion for relief from automatic stay. *See In re Keziah*, 46 B.R. 551, 12 B.C.D. 887 (Bankr.W.D.N.C.1985).

However, § 109(f) is not broad enough to countermand the efforts of creative debtors and their counsel to avoid its effects. But Congress' intent in passing the section makes it clear that bad faith multiple filers should not be allowed the opportunity to avail themselves of the benefits of the Bankruptcy Code to the detriment of their creditors.

The intent behind § 109(f) should be allowed, in future cases, to cover situations such as this one, where two or more individuals have acted effectively as one debtor with a common illegal purpose. Five of the members of the Kinney family have operated as one entity to repeatedly forestall, without good cause, an impending foreclosure sale. An appropriate order in a case like this would deny the protection of the automatic stay to specific property when there is a clear nexus among the various petitioners. Such an order would allow the debtor the protections of the Bankruptcy Code where a bona fide need for such protections exists, but limit other abusive behavior.

## AVAILABLE SANCTIONS

■ Appropriate sanctions may be imposed by this Court against parties and counsel who multiply bankruptcy proceedings unreasonably and vexatiously. *In re Perez*, 43 B.R. 530 (Bankr.S.D.Tex.1984). Monetary sanctions may be imposed on attorneys for unreasonably and vexatiously delaying ongoing proceedings without reason. *See also In re Villareal*, 46 B.R. 284 (Bankr.C.D.Cal.1984).

"It is well settled that this Court has inherent authority to assess attorney's fees and expenses 'against counsel who willfully

---

**2.** It should be noted that Julia Coleman was also the attorney in this case. The Memorandum of Opinion regarding sanctions in the *Jones* case was entered on July 5, 1984, after Coleman had prepared Kinney #9. There is no indication that she was previously notified of Judge Russell's ruling against her. Had her actions in Kinney occurred after the *Jones* Opinion, the sanctions imposed by this Court would be substantially harsher.

abuses judicial processes,' ...". *In re Perez*, 43 B.R. at 534 quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488.

■ Similarly, previous Bankruptcy Rule 911, and its successor, Rule 9011, authorize sanctions against attorneys for pressing improper litigation. Rule 9011 is substantively identical to F.R.C.P. 11. An attorney's signature on court documents acts as a representation that the document is well grounded in fact and law, and not interposed for an improper purpose such as delay. *In re Whitten*, 11 B.R. at 339–40; *In re Bayport Equities Corp.*, 36 B.R. 575, 10 Collier Bankr.Cas.2d, 160 (Bankr.C.D. Cal.1983).

■ When Ms. Coleman signed the documents in these bankruptcy filings, she represented her good faith intention to comply with the Bankruptcy Code. And indeed, repeated testimony revealed that the Kinneys and Ms. Coleman believed it proper to file bankruptcy petitions to delay or prevent creditors from realizing on their collateral.

Ms. Coleman also stated that she believed that the stipulation in Kinney # 8, granting absolute relief from stay and preventing any further filings from delaying the foreclosure sale was not binding on non-parties, even though it contained language to that effect. She did not file any objection to the language in the stipulated order, nor did she seek clarification. She stated that her failure to object was because she got involved in other matters and just didn't get to do it. Coleman testified that she believed that the Court lacked jurisdiction to create an order binding on non-parties and therefore concluded that Kinney # 9 could be lawfully filed.

Ms. Coleman repeatedly testified to her belief that a debtor has the substantive equivalent of a constitutional right to utilize the automatic stay to protect property from foreclosing creditors. Coleman stated that such filings are not made in bad faith, even if the debtor does not have the ability to reorganize.

Though she is an experienced bankruptcy attorney, Ms. Coleman believes that her abusive use of the Bankruptcy Code for the sole purpose of delaying foreclosure is proper. This belief lacks sound authority and is outrageous in these circumstances.

Ms. Coleman tries to argue that her "good faith" belief is sufficient to isolate her from sanctions under Rule 9011. This Court disagrees. An attorney is required to know the requirements of the law and abide by them. Ms. Coleman cannot merely ignore opinions such as *In re Whitten*, in which it was stated:

> ... this Court hereby unequivocally and emphatically states to both this particular counsel and the Bar at large that this Court will not sanction the filing of a Chapter 13 petition in the future where the only intended goal and the only function to be served is the buying of time.... [A] petition filed to merely seek delay by the protective provisions of the automatic stay found in 11 U.S.C. § 362(a), is not to be deemed a petition filed in good faith within the strictures of Bankruptcy Rule 911. 11 Bankr. at 340.

The Federal Costs Statute, 28 U.S.C. § 1927, stands ready as another basis to sanction any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" as to justify the imposition of "costs, expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Precedent exists for the application of Section 1927 to counsel before the Bankruptcy Court. *In re Johnson*, 24 B.R. 832 (Bankr.Pa.1982); *In re Trust Deed Center, Inc.*, 36 B.R. at 849.

Therefore although Ms. Coleman was not the attorney of record at the time of the filing of Kinney # 9, her advice and participation in bringing about the filing makes her liable for sanctions under § 1927.

This Court finds that Attorney Coleman's conduct was unreasonable and vexatious. Ms. Coleman's "good faith" belief in some penumbral constitutional right to file multiple petitions involving the same piece of property without a change of circumstances nor an intent to reorganize does not

exculpate her from liability. Without any case authority or reasonable extension or reversal of existing case precedent to support her belief, she acted totally unreasonably in the later Kinney cases. *See In re Perez*, 43 B.R. at 533. Counsel has a duty to act within the law and to advise her clients as to the current state of the law and cannot insulate herself from sanctions by claiming that she believed the law to be other than it is.

In fashioning an appropriate order, the Court must consider the cost to the abused creditor and the amount which is reasonable to deter future abusive behavior by the debtor and/or his attorney. In this case, the Court believes that the minimum amount to be reimbursed to Imperial Bank for post-foreclosure costs, fees and delays, is no less than $2,500.00. (Presumably pre-foreclosure expenses were reimbursed through retaking the property.) Further, to the extent that Ms. Coleman benefited from her involvement in Kinney # 4 through Kinney # 10, she should not be allowed to keep that money.

Therefore, Ms. Coleman is to, within 30 days of the date hereof, submit to the Court (having served a copy on Imperial Bank and its counsel), a declaration under penalty of perjury setting forth the payment, terms, amounts, and arrangements; describing all compensation agreed to (whether received or not); and stating the amounts of all monies received in or pertaining to the cases Kinney # 4 through Kinney # 10. To the extent that this is less than the $2,500.00 ordered above, the Court's award of sanctions will be in the amount of $2,500.00 to be paid to Imperial Bank forthwith. To the extent that the declaration shows an amount paid or payable to Ms. Coleman in excess of $2,500.00, Ms. Coleman is to forthwith pay the amount of $2,500.00, and the Court will order whether a further sum shall be paid thereafter.

The Court finds that although Bryan Kinney acted so as to improperly delay foreclosure when he filed Kinney # 9, he did so with the consent of his attorney and could rely on that. Therefore no sanctions are awarded as to Bryan Kinney.