**In re Lamar M. JOLLY and Harriet T. Jolly.**

**Lamar M. JOLLY and Harriet T. Jolly, Appellants,**

v.

**GREAT WESTERN BANK, f/k/a Great Western Savings, Appellee.**

**Action No. 4:92cv53.**

United States District Court, E.D. Virginia, Newport News Division.

Aug. 4, 1992.

Lamar M. Jolly, Harriet T. Jolly, pro se.

Robyn Hylton Hansen, Jones, Blechman, Woltz & Kelly, Newport News, Va., for appellee.

Debera F. Conlon, Asst. U.S. Trustee.

### OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on Debtors Lamar M. Jolly and Harriet T. Jolly's appeal from an order of the bankruptcy court dismissing Debtors' Chapter 11 bankruptcy petition with prejudice and prohibiting Debtors from filing any bankruptcy action in any court for 180 days from the date of that order, filed March 31, 1992.

#### I. Factual Background

Debtors have a long history of bankruptcy filings since 1989. In 1989, Debtor Lamar Jolly, individually, filed a petition for relief under the provisions of Chapter 7 of the United States Bankruptcy Code in the Middle District of Florida, Jacksonville Division. Mr. Jolly received a discharge in this bankruptcy in July, 1989. After that discharge, in October, 1989, Great Western Bank (hereinafter "Great Western") instituted foreclosure proceedings against Debtors in the Circuit Court of the Seventh Judicial Circuit of the State of Florida, in Volusia County. Great Western is a secured creditor of Debtors, pursuant to a promissory note adjustable rate mortgage loan (hereinafter "Note") dated March 10, 1986, executed in the original principal amount of $138,700. The Note is secured by a mortgage deed (hereinafter "Mortgage") on Debtors' condominium, which was executed on the same date as the note and properly recorded. Debtors are in de-

fault, having failed to make a payment due on July 15, 1989, as well as subsequent payments, except for adequate protection payments for June, July, and August, 1990, and February and March, 1991, which payments were ordered by the Bankruptcy Court for the Middle District of Florida. The balance of principal and interest due and owing on the Note as of April 16, 1992, was $183,863.92. Interest, costs and attorney's fees pursuant to the terms of the Note and Mortgage continue to accrue.

Since the time of Mr. Jolly's initial Chapter 7 bankruptcy discharge in 1989, Debtors, either individually or jointly, have filed six other petitions for bankruptcy under various Chapters in their attempt to avoid foreclosure on their condominium:

On December 13, 1989, Debtors filed a joint petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia, Newport News Division. This case was dismissed on January 30, 1990.

On or about May 1, 1990, Debtor Lamar M. Jolly filed a petition for relief under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division. This case was dismissed on October 15, 1991.

On or about November 5, 1990, Debtors filed a joint Chapter 13 proceeding in the Middle District of Florida. That case was dismissed on March 25, 1991.

On or about June 11, 1991, Debtors filed a joint Chapter 13 petition in the Middle District of Florida, Jacksonville Division. This case was dismissed on Great Western's motion on September 23, 1991. The court specifically stated in its order that no further filings by Debtors in the Middle District of Florida would preclude Great Western from foreclosing. This order was appealed by Debtor Harriet Jolly and was still pending at the time of the hearing in the appeal currently before this court.

In December, 1991, Debtors jointly instituted the instant suit, a petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia. As will be more fully detailed below, this case was dismissed with prejudice upon motion of Great Western in March, 1992. The bankruptcy court further prohibited Debtors from filing any bankruptcy in any court for 180 days. Debtors have appealed the bankruptcy court's ruling to this court.

On June 10, 1992, the date of the scheduled judicial foreclosure trial in Florida, Debtor Lamar Jolly, individually, filed a proceeding under Chapter 13 of the United States Bankruptcy Code in the Middle District of Georgia, Valdosta Division. This case is currently pending.

Mr. Jolly has stated in open court and in his legal memoranda that he filed all but his initial bankruptcy proceeding to forestall foreclosure on his condominium. He also asserts that his primary intent is reorganization.

## II. Procedural Background and Issue on Appeal

Debtors filed this Chapter 11 proceeding on December 18, 1991. At a February 28, 1992, hearing, the bankruptcy court, pursuant to 11 U.S.C. § 362, granted relief from stay to Great Western so that it could foreclose on the Mortgage on Debtors' condominium (Bankr.Order of March 10, 1992). At a March 13, 1992, hearing, on Great Western's motion, the bankruptcy court, finding "cause within the meaning of 11 U.S.C. § 105," dismissed Debtors' case with prejudice and prohibited Debtors from filing any bankruptcy action in any bankruptcy court for 180 days (Bankr.Order of March 31, 1992). Debtors appeared at the February 28, 1992, hearing, but failed to appear for the March 13, 1992, hearing.

Subsequently, the bankruptcy court denied Debtors' motions (1) for additional time to appeal the court's order granting relief from stay (Bankr.Order of March 20, 1992); (2) to amend findings of fact (Bankr.Order of April 16, 1992); (3) to amend a judgment order (Bankr.Order of April 16, 1992); and (4) for a new trial (Bankr.Order of April 16, 1992). In deny-

ing Debtors' motions on issues 2–4, the bankruptcy court stated: "The debtors would perpetuate what has been determined by the court to be an abuse of process." (Bankr.Order of April 16, 1992).

On or around April 24, 1992, the bankruptcy court granted Debtors' request for a stay pending appeal on the condition that Debtors post a supersedeas bond in the amount of interest due on Debtors' debt to Great Western at that time and for the ensuing six months. Debtors appealed the bankruptcy court's requirement of a supersedeas bond to the district court. On May 11, 1992, this court affirmed the bankruptcy court's decision with respect to the posting of the supersedeas bond. Debtors appealed all stay decisions to the Fourth Circuit, which denied stay pending appeal with respect to the granting of relief from the automatic stay, as well as with respect to the district court's order requiring supersedeas bond. The Fourth Circuit granted stay pending appeal with respect to the bankruptcy court's order prohibiting Debtors from filing any bankruptcy in any court for 180 days.

The sole issue appealed by Debtors is the bankruptcy court's dismissal of their case with prejudice and the prohibition against filing any bankruptcy action in any court for 180 days.

## III. Standard of Review

Factual findings of the bankruptcy court will not be set aside unless they are clearly erroneous, and "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankr.R. 8013. "A bankruptcy court's finding of fact is 'clearly erroneous' when, although there is evidence to support it, the

reviewing court ... is left with the definite and firm conviction that a mistake has been committed." *In re Rape,* 104 B.R. 741, 747 (W.D.N.C.1989). *See also, United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948). A bankruptcy court's finding of fact is also "clearly erroneous" when "it is not supported by substantial evidence," is "contrary to the clear preponderance of the evidence" or, in a somewhat different vein, is "based upon an erroneous view of the law." *Id. Cf. In re Hammer,* 112 B.R. 341, 345 (Bankr. 9th Cir.1990) ("A trial court abuses its discretion if it rests its conclusions on clearly erroneous factual findings or an incorrect legal standard").

Conclusions of law are reviewed *de novo. See, e.g., Brown v. Mt. Prospect State Bank (In re Muncrief),* 900 F.2d 1220, 1224 (8th Cir.1990); *Arizona Appetito's Stores, Inc. v. Paradise Village Inv. Co. (In re Arizona Appetito's Stores, Inc.),* 893 F.2d 216, 218 (9th Cir.1990); *Finney v. Smith,* 141 B.R. 94 (E.D.Va. May 7, 1992) (citing, *e.g., United States Trustee v. Kinser,* 128 B.R. 417, 418 (W.D.Va.1991)).

## IV. Analysis

Debtors first argue that the bankruptcy court erred in finding, pursuant to 11 U.S.C. § 105,[1] that they had abused the bankruptcy process. Second, Debtors argue that the bankruptcy court misapplied 11 U.S.C. § 105 in dismissing Debtors' case with prejudice for 180 days. In short, Debtors argue that § 105 cannot be used to contravene other provisions of the Bankruptcy Code, and that, in this case, the bankruptcy court's holding, made pursuant to § 105, is in conflict with the terms of 11 U.S.C. §§ 349(a)[2] and 109(g).[3]

---

**1.** 11 U.S.C. § 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

**2.** 11 U.S.C. § 349(a) provides:

Unless the court, for cause, orders otherwise, the dismissal of a case under this title does

not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(f) of this title.

Congress redesignated § 109(f) as § 109(g), and, when doing so, inadvertently failed to change the reference in § 349. *See, e.g., Lerch v. Federal Land Bank of St. Louis,* 94 B.R. 998, 1000 (N.D.Ill.1989).

**3.** 11 U.S.C. § 109(g) provides:

## A. Abuse of Process

■ Given the numerous and repetitious filings of Debtors, this court finds that the bankruptcy judge was not in error, nor did he abuse his discretion, in finding that Debtors abused the process of the bankruptcy courts. "As a general proposition, the [c]ourt must determine whether litigation is being pursued in good faith by considering all the facts and circumstances before it." *In re Kinney*, 51 B.R. 840, 845 (Bankr.C.D.Cal.1985). Furthermore, "[t]he bankruptcy code implicitly and explicitly imposes on debtors a duty of good faith in filing and maintaining bankruptcy actions." *Id.* Although filing a bankruptcy petition to prevent foreclosure is not, in and of itself, reprehensible or abusive, *see In re Walker*, 102 B.R. 612, 615 (Bankr.N.D.Ohio 1989), bad faith multiple filings merely to forestall foreclosure may be abusive of court process. *See id.* at 616; *Kinney*, 51 B.R. at 845, *In re Jones*, 41 B.R. 263 (Bankr.C.D.Cal.1984).

Given the seven bankruptcies Debtors have filed jointly or individually over the past three years and given Mr. Jolly's assertions that these repeated bankruptcy applications were filed to prevent foreclosure, this court finds that the bankruptcy judge did not clearly err, nor did he abuse his discretion, in finding, pursuant to § 105 of the Bankruptcy Code, that Debtors had abused the process of the bankruptcy courts.[4]

## B. Application of § 105(a)

Debtors maintain that the bankruptcy court exceeded its equitable powers granted pursuant to 11 U.S.C. § 105 in dismissing Debtors' case with prejudice and prohibiting them from filing any bankruptcy in any court within 180 days of the bankruptcy court's order, and that the bankruptcy court's powers under § 105 are limited by §§ 349(a) and 109(g) of the Bankruptcy Code.

This particular issue has not been addressed by the Fourth Circuit. However, more generally, the Fourth Circuit has held that,

[w]hile the equitable powers emanating from § 105(a) are quite important in the general bankruptcy scheme, and while such powers may encourage courts to be innovative, even original, these equitable powers are not a license for a court to disregard the clear language and meaning of bankruptcy statutes and rules.

*Official Committee of Equitable Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir.1987). In essence, Debtors argue that, pursuant to *Mabey*, the dismissal of their case must comply with the terms of § 349(a).[5] Since § 349(a) references what is now § 109(g), the bankruptcy court's dismissal of Debtors' case must also comply with the terms of § 109(g).[6] Debtors argue that the bankruptcy court's dismissal of their case does not fall within the parameters set forth in § 109(g). That is, Debtors contend that the court should not have dismissed Debtors suit with prejudice, nor should it have prohibited any other bankruptcy filings for 180 days, because Debtors' case was not dismissed for willful failure to abide by orders of the court or to properly prosecute the case, nor was it dismissed following the request of Debtors for the voluntary dismissal of the case fol-

---

Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

    (1) the case was dismissed by the court for willful failure of the debtor to abide by the orders of the court, or to appear before the court in proper prosecution of the case; or

    (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for a relief from the auto-

matic stay provided by section 362 of this title.

4. Moreover, Mr. Jolly's personal liability was apparently already discharged in his initial Chapter 7 bankruptcy in Florida in 1989. Thus, his later bankruptcy filings were merely a ploy to prevent foreclosure on his condominium through imposition of the automatic stay.

5. *See supra* note 2 for text of statute.

6. *See supra* note 3 for text of statute.

lowing the filing of a request for relief from automatic stay.

The merit of Debtors' argument depends at a threshold level upon *their* interpretation of § 349(a). If the court were to agree with Debtors' interpretation, then the court could find that the bankruptcy court's decision, made pursuant to § 105, was in conflict with §§ 349(a) and 109(g).[7] However, this court does not agree with Debtors' interpretation of § 349(a) and does not find that the bankruptcy court's ruling made pursuant to § 105(a) disregarded the plain language and meaning of § 349(a).[8]

Debtors argue that the qualifying phrase in § 349(a), "[u]nless the court, for cause, orders otherwise," applies only to the clause preceding the semi-colon, and that it does not apply to the clause following the semi-colon. The phrase preceding the semi-colon reads: "[T]he dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed;" 11 U.S.C. § 349(a). The phrase following the semi-colon reads: "[N]or does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(f)." 11 U.S.C. § 349(a). If, according to Debtors, the qualifying phrase, "Unless the court, for cause, orders otherwise," does not modify the clause following the semi-colon, then the only way a debtor may be prejudiced regarding the filing of a subsequent petition is pursuant to the terms of § 109(g) (formerly § 109(f)), whose terms, Debtors argue, do not apply to their case.[9]

■ This court, however, finds that the qualifying phrase in § 349(a) applies both to the clause preceding the semi-colon and the clause following the semi-colon. The semi-colon does not create two completely separate clauses. Indeed, use of the word "nor" implies conjunction between the two clauses. Furthermore, Congress used the same syntax in constructing both clauses, and both clearly refer to the same dismissal. One clause simply states that the dismissal does not usually bar a later discharge of debts; the other states that the dismissal does not prejudice a debtor with respect to later filings. The semi-colon, as it is used in this statutory provision, is merely a means of punctuating a long sentence. This reading of § 349(a) means that a debtor may be prejudiced from filing subsequent bankruptcy petitions under two circumstances: (1) if the court, for cause, so orders, or (2) if the terms of § 109(g) apply to debtors' case.

Thus, this court finds that, so long as the dismissing court finds cause, a bankruptcy action may be dismissed with prejudice for 180 days, or more, without violating the terms of § 349(a) or, for that matter, § 109(g).[10] *See Lerch v. Federal Land Bank of St. Louis*, 94 B.R. 998 (N.D.Ill. 1989) (holding that the bankruptcy court, by dismissing a suit with prejudice for two years pursuant to § 105(a) because of debtor's bad faith, did not override any specific or explicit mandates of any other sections of the Bankruptcy Code, specifically §§ 349(a) and 109(g)). The court in *Lerch* stated: "The clear meaning of this statutory reference under the Code is that unless the court 'for cause, orders otherwise,' the court may not dismiss a case with prejudice for a period beyond the explicit 180–day limitation found in Section 109(g)". *Id.* at 1001; *see also In re Dilley*, 125 B.R. 189, 197 (Bankr.N.D.Ohio 1991) (dismissing

---

**7.** Even if it were to adopt Debtors' interpretation of § 349(a), the court might not find that § 109(g) conflicted with the bankruptcy court's dismissal of Debtors' case. The court *could* read § 109(g) as setting forth a minimum amount of time before a *debtor* may *refile* a case, not a maximum period of time for which a *bankruptcy court* may *dismiss* a case with prejudice. *See Lerch*, 94 B.R. at 1001.

**8.** Since the court finds that the bankruptcy court's dismissal of Debtors' bankruptcy for

cause does not conflict with the terms of § 349(a), it necessarily follows that the bankruptcy court's ruling does not conflict with the terms of § 109(g). Technically speaking, however, because the bankruptcy court's ruling does not conflict with 349(a), the issue of whether that ruling conflicts with § 109(g) does not even arise.

**9.** *See supra* at 386–387.

**10.** *See supra* note 8.

with prejudice for one year for abusive practices and stating that "even if the Debtor's efforts to extend his fourteen month enjoyment of bankruptcy protections free of Court control without evidence of feasibility or good faith wee immune from constant constraint under 349(a), it appears that the Court has authority under section 105 of the Bankruptcy Code to impose appropriate restraints"); *In re Hundley,* 103 B.R. 768, 771 (Bankr.E.D.Va.1989) (dismissing Chapter 13 debtor with prejudice for one year, pursuant to §§ 105, 349 and 1307); *In re McKissie,* 103 B.R. 189, 193 (Bankr.N.D.Ill.1989) (dismissing Chapter 7 debtors with prejudice for one year). *But see In re Freiouf,* 938 F.2d 1099, 1103 (10th Cir.1991) (finding that the qualifying phrase in § 349(a) applies only to the clause preceding the semi-colon and reversing district court's order affirming the judgment of the bankruptcy court, which denied debtor all access to the bankruptcy court beyond 180 days for debts not related to that case).

Accordingly, having found cause in this case, the bankruptcy court, pursuant to § 105(a), properly dismissed Debtors' suit with prejudice and prohibited Debtors from filing a bankruptcy in any bankruptcy court for 180 days. In so doing, the bankruptcy court did not disregard the language and meaning of §§ 349(a) or 109(g).[11]

### V. Conclusion

Finding neither legal nor factual error, nor abuse of discretion, in the bankruptcy court's ruling, this court AFFIRMS the bankruptcy court's dismissal with prejudice

---

11. In fact, the bankruptcy court's ruling is consistent with the Congress' rationale in enacting § 109(g):

 Congress moved to combat these increasingly prevalent abuses of the Bankruptcy Code by enacting 11 U.S.C. § 109(f) [now § 109(g) ] in October of 1984. Section 109(f) seeks to limit bad faith filings by preventing individuals from being debtors for a period of 180 days....

 However, § 109(f) is not broad enough to countermand the efforts of creative debtors and their counsel to avoid its effects. But Congress' intent in passing the section makes it clear that bad faith multiple filers should

of Debtors' suit in bankruptcy and the 180–day prohibition against further bankruptcy filings in any court.

Pursuant to Rules 6(b) and 4(a) of the Federal Rules of Appellate Procedure, any notice of appeal from this final order shall be filed, in writing, with the Clerk of the United States District Court, U.S. Courthouse, 600 Granby Street, Norfolk, Virginia 23510, within thirty (30) days from the date of this order.

It is so ORDERED.

---

not be allowed the opportunity to avail themselves of the benefits of the Bankruptcy Code to the detriment of their creditors.

 The intent behind § 109(f) should be allowed, in future cases, to cover situations such as this one, where two or more individuals have acted effectively as one debtor with a common illegal purposes.

*Kinney,* 51 B.R. at 846; *see also Dilley,* 125 B.R. at 197 ("The fact that the Code expressly provides refiling prohibitions under sections 109(g) also lends support to the Court's fashioning similar prohibitions under sections 349(a) or 105(a) where appropriate").